```
                                                    ┌─────────────────────────────────┐
                                                    │ USDC SDNY                       │
                                                    │ DOCUMENT                        │
                                                    │ ELECTRONICALLY FILED            │
                                                    │ DOC #: _____         │
                                                    │ DATE FILED:    3/21/2023        │
                                                    └─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN HAMLETT,

                       Plaintiff,

-against-

TAJ K. EVERLY, C.O.; CHRISTOPHER J.
DILLON, C.O.; GARY J. PERROTTA, JR.;
ANTONIO M. ALBAN, C.O.; THOMAS A.
GERMANO, JR., C.O.; RICHARD T.
FLANAGAN; MICHEL BLOT, JR.;
MICHAEL D. FUNK, SGT.; DONALD
VENETTOZZI; MARILYN KOPP; D.
HEITZ, EDWIN UZU, AND MR.
JOHANAMANN,

                       Defendants.

21-cv-6663 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

       Plaintiff John Hamlett ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action against Correctional Officer Taj K. Everly ("Everly"), Correctional Officer Christopher J. Dillon ("Dillon"), Correctional Officer Gary J. Perrotta Jr. ("Perrotta Jr."), Correctional Officer Antonio M. Alban ("Alban"), Correctional Officer Thomas A. Germano Jr. ("Germano Jr."), Correctional Officer Richard T. Flanagan ("Flanagan"), Correctional Sergeant Michel Blot Jr. ("Blot Jr."), Correctional Sergeant Michael D. Funk ("Funk"), New York State Department of Corrections and Community Supervision Director of Special Housing Donald Venettozzi ("Venettozzi"), Hearing Officer Marilyn Kopp ("Kopp"), Nurse D. Heitz ("Heitz"), Dr. Edwin Uzu ("Uzu"), and Correctional Sergeant Johanamann ("Johanamann") (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 through a Complaint filed on August 5, 2021 (("Compl.") ECF No. 2).  Plaintiff asserts Section 1983 claims for retaliation, excessive force, deliberate indifference to medical needs, failure to protect, and violations of due process.  (*Id.*)  Presently before the Court

is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The following facts are derived from the Complaint and the documents appended thereto and are assumed to be true for the purposes of this motion.

On August 7, 2018, Plaintiff asked Correctional Officer Danielle Germano—the sister of Germano Jr.—to allow Plaintiff access to food, recreation, and the prison commissary.  (Compl. at ¶¶ 1–2.)  Danielle Germano refused.  (*Id.* at ¶ 2.)  Later that day, Everly refused to allow Plaintiff to go to recreation because Plaintiff "complain[ed] too much."  (*Id.* at ¶ 3.)  Plaintiff filed grievances relating to both incidents.  (*Id.* at ¶ 4.)

On August 14, 2018, Blot Jr. questioned Plaintiff about his grievances.  (*Id.* at ¶¶ 5–6.) According to Plaintiff, Blot Jr. is related to Everly.  (*Id.* at ¶ 6.) Although Plaintiff was now allowed to go to recreation, Everly delayed Plaintiff so that he would not have access to his telephone privileges.  (*Id.* at ¶¶ 7–8.)  Moreover, when Plaintiff returned to his cell after recreation, he noticed some of his personal items were missing.  (*Id.* at ¶ 9.)  The next day, when Plaintiff returned from dinner, he again noticed another item was missing.  (*Id.* at ¶ 10.)  Other prisoners told Plaintiff that Everly had taken Plaintiff's items from Plaintiff's cell.  (*Id.*)

Plaintiff again complained about Everly, this time to Johanamann and Blot Jr.  (*Id.* at ¶¶ 12–13.)  Johanamann dismissed Plaintiff, asking, "What do you want me to do?"  (*Id.* at ¶ 12.) Blot Jr., meanwhile, did nothing.  (*Id.* at ¶ 13.)  That same day, when Plaintiff was returning to his cell, Everly refused to open Plaintiff's cell door and told him, "'I control you. I own you. You belong to me."  (*Id.* at ¶¶ 14–15.)  When Everly finally allowed Plaintiff to enter his cell, Plaintiff noticed more items were missing.  (*Id.* at ¶ 15.)

On August 20, 2018, Plaintiff's razor went missing.  (*Id.* at ¶¶ 18, 21.)  Informed by other prisoners that Everly had entered Plaintiff's cell and taken his razor, Plaintiff grew concerned Everly "was planning on setting [Plaintiff] up with a weapon."  (*Id.* at ¶¶ 21–22.)  Plaintiff alerted Funk that Everly had taken items from Plaintiff's cell, including his razor, and Funk told Plaintiff he would "take care of it."  (*Id.* at ¶ 22.)

The next day, while Plaintiff was at recreation, Everly ordered Plaintiff to remove everything from his pockets and place his hands on the wall.  (*Id.* at ¶ 23.)  Plaintiff complied. (*Id.*)  In the presence of Dillon, Perrotta Jr., Alban, and Germano Jr. (*id.* at ¶ 24), Everly "smashed" Plaintiff's head against the "concrete" wall, rendering Plaintiff unconscious (*id.* at ¶ 25).  While Plaintiff was unconscious, Everly, Dillon, Perrotta Jr., Alban, Germano Jr., and Flanagan proceeded to beat, kick, and mace Plaintiff.  (*Id.* at ¶¶ 25–26.)  Blot Jr. and Flanagan then dragged Plaintiff to the Special Housing Unit ("SHU"), or solitary confinement.  (*Id.* at ¶ 27.)

Heitz and Uzu examined Plaintiff while he was in SHU.  (*Id.* at ¶¶ 28–29.)  Although Plaintiff alleges he sustained a concussion and cuts to his mouth, Heitz and Uzu did not send Plaintiff to an outside hospital.  (*Id.* at ¶ 28.)

Everly, Dillon, and Alban then filed a "false" disciplinary report against Plaintiff.  (*Id.* at ¶ 29.)  Kopp, the hearing officer, failed to investigate allegations that prison staff was intimidating witnesses, failed to provide Plaintiff with a proceeding assistant, denied Plaintiff access to relevant documents, and questioned witnesses in Plaintiff's presence but off the record.  (*Id.* at ¶¶ 30–35.) Kopp found Plaintiff guilty of all disciplinary charges (*id.* at ¶ 30), and he sentenced Plaintiff to 45 days of solitary confinement in the SHU, including the loss of phone, package, and commissary privileges (*id.* at ¶ 41).  Kopp also required Plaintiff to complete the "A.R.T. program," which Plaintiff had already completed.  (*Id.*)  Venettozzi affirmed Kopp's decision upon appeal.  (*Id.* at ¶ 36.)

**LEGAL STANDARDS**

**I.      Fed. R. Civ. P. 12(b)(6)**

On a Fed. R. Civ. P. 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

**II.      42 U.S.C. § 1983 Claims**

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983

4

"is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Read liberally, Plaintiff is asserting the following Section 1983 claims: (1) excessive force in violation of the Eighth Amendment against Everly, Dillon, Perrotta Jr., Alban, Germano Jr., and Flanagan; (2) retaliation in violation of the First Amendment against Everly, Dillon, Perrotta Jr., Alban, Germano Jr., and Flanagan; (3) deliberate indifference to medical needs in violation of the Eighth Amendment against Heitz, Uzu, Blot Jr., and Flanagan; (4) failure to protect in violation of the Eighth Amendment against Blot Jr., Funk, and Johanamann; and (5) violation of due process pursuant to the Fourteenth Amendment against Everly, Kopp, and Venettozzi. Defendants do not move, at this time, to dismiss Plaintiff's excessive force claims against Everly, Dillon, Perrotta Jr., Alban, Germano Jr., and Flanagan. Defendants, however, move to dismiss all of Plaintiff's other claims. The Court addresses each of these claims in turn.

### I.     Retaliation

Plaintiff alleges three acts of retaliation, each motivated by the grievances he filed against non-party Danielle Germano and Defendant Everly: (1) an assault, carried out by Everly, Dillon, Perrotta Jr., Alban, Germano Jr., and Flanagan; (2) a false disciplinary report against Plaintiff, filed by Everly, Dillon, and Alban; and (3) items stolen from Plaintiff's cell by Everly.

5

A plaintiff asserting a retaliation claim has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. . . . Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema*, 534 U.S. 506 (2002) (citations omitted). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* In addition, the "casual connection" element requires a plaintiff to prove that an adverse action relates to protected First Amendment activity—that is, the plaintiff must present evidence from which a jury could conclude that the plaintiff's protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "To survive a motion to dismiss, such claims must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000) (internal quotations omitted).

The Second Circuit has repeatedly held that a court must assess a claim of retaliation with "skepticism and particular care" because such claims are "easily fabricated" by inmates. *Dawes*, 239 F.3d at 491. Such claims create a "substantial risk of unwarranted judicial intrusion into matters of general prison administration" because:

> [V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act. . . .  Given that such

adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

*Id.* (internal citations and quotations omitted).

At the outset, Plaintiff sufficiently alleges the first and third prongs of a retaliation claim. For one, it is well-settled that "the filing of prison grievances is a constitutionally protected activity." *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003). In addition, each retaliatory act constitutes an "adverse action." An alleged assault need not rise to the level of excessive force under the Eighth Amendment to constitute an adverse action for retaliation purposes. *George v. County of Westchester, et al.*, No. 20-CV-1723 (KMK), 2021 WL 4392485, at *8 (S.D.N.Y. Sept. 24, 2021) (collecting cases). Plaintiff's allegations that he was slammed into a concrete wall, beaten, kicked, and maced meet this lower standard and thus constitute adverse action. (*See* Compl. at ¶¶ 25–26.) *See, e.g., Rivera v. Goord*, 119 F. Supp. 2d 327, 333, 340 (S.D.N.Y. 2000) (finding assault was "adverse action" where defendant "pinned [plaintiff] against a wall, banging his face into the wall and twisting his arms behind him"). The filing of a false disciplinary report also constitutes adverse action. *George*, 2021 WL 4392485, at *6 (collecting cases) (citing *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004)). Plaintiff's allegations that Everly stole items from his cell presents a closer call. (*See* Compl. at ¶¶ 9, 10, 15, 21.) Although incarcerated individuals do not possess a constitutional right to be free from a retaliatory *search*, they may still assert that such a search constitutes an adverse action where retaliatory conduct occurs during that search. *See, e.g., George*, 2021 WL 4392485, at *5 (collecting cases). For example, a prison official's decision to seize an individual's legal documents during a search may constitute an adverse action. *See Smith v. City of New York*, No. 03-CV-7576, 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) (holding that destruction of plaintiff's legal papers constituted an adverse action). That is especially true where the seized items tend to chill an individual's speech, such as their ability to

file further grievances. *See Hill v. Laird*, No. 06-CV-0126 JS ARL, 2014 WL 1315226, at *8–9 (E.D.N.Y. Mar. 31, 2014). Here, Plaintiff meets that threshold: if Everly took Plaintiff's razor, as alleged, then Plaintiff could be disciplined for that missing razor and sentenced to keep-lock confinement. (Compl. at ¶ 22.) Such confinement, even if lasting just one day, plausibly constitutes an adverse action, *see Flood v. Cappelli*, No. 18-CV-3897 (KMK), 2019 WL 3778736, at *7 (S.D.N.Y. Aug. 12, 2019) (collecting cases), and thus it is plausible that conduct that may foreseeably lead to such confinement—such as stealing Plaintiff's razor—likewise constitutes an adverse action.

Plaintiff, however, fails to establish the necessary causal connection between his protected activity—filing grievances against Danielle Germano and Everly—and Defendants' retaliatory conduct. Beyond conclusory allegations, the Complaint is silent regarding Defendants' motive for their retaliatory conduct. Plaintiff includes no allegations to suggest Everly, Dillon, Perrotta Jr., Alban, Germano Jr., or Flanagan knew of the grievances Plaintiff filed. At best, Plaintiff alleges that only Blot Jr., Funk, and Johanamann knew of Plaintiff's grievances. (Compl. at ¶¶ 5–6, 12–13, 22.) Aside from Plaintiff's speculative allegation that Blot Jr. is related to Everly (*id.* at ¶ 6), the Complaint provides no basis upon which this Court can infer Everly, Dillon, Perrotta Jr., Alban, Germano Jr., and Flanagan learned of the grievances through Blot, Funk, and Johanamann. As such, Plaintiff does not establish a causal connection showing Defendants' conduct was motivated by Plaintiff's protected activity.

Accordingly, this Court dismisses without prejudice Plaintiff's retaliation claims.

## II.     Deliberate Indifference to Medical Needs

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. However, the Eighth Amendment's protection extends beyond claims of a disciplinary context and further "imposes a duty on prison officials to ensure that inmates receive

adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). The Supreme Court concluded that "deliberate indifference to an inmate's medical needs is cruel and unusual punishment" because "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citation omitted).

To satisfy an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate: (1) an objectively serious medical need, which "exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain' " and (2) Defendant's subjective "deliberate indifference," measuring whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

To establish that a medical condition was "sufficiently serious," a plaintiff must allege "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Coke v. Med., Dep't of Corr. & Cmty. Supervision*, No. 17-CV-0866 (ER), 2018 WL 2041388, at *3 (S.D.N.Y. Apr. 30, 2018). There are various relevant factors that the court may consider when deciding whether a medical condition is "sufficiently serious" including: chronic and substantial pain or the presence of a medical condition that significantly affects an individual's daily activities. *Id.* However, an actual physical injury is not necessary to claim inadequate medical care. *Smith v. Carpenter*, 316 F.3d 178, 188 (2d Cir. 2003). Rather, a sustainable inadequate medical care claim can be based on an inmate's exposure to an unreasonable risk of future harm. *Id.* Nonetheless, as the Supreme Court noted, a prison officials' duty is only to provide reasonable care. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Additionally, "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness – 'an act or a failure to act by [a] prison

9

doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ) (internal quotation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) (noting that an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind" (quotations omitted)); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (observing that "negligent malpractice do[es] not state a claim of deliberate indifference"); *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

The Supreme Court has explained that an Eighth Amendment violation occurs when a prison official demonstrates "'deliberate indifference' to a substantial risk of serious harm." *Farmer*, 511 U.S. at 837. This standard assesses whether the charged defendant had a mental state of mind equivalent to criminal recklessness wherein the official knew and disregarded an "excessive risk to inmate health or safety." *Id.; see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (noting that "deliberately refus[ing]" to treat a medical condition "with conscious disregard of the substantial risk of serious harm" constitutes deliberate indifference). Consequently, mere negligence is insufficient to state a claim of deliberate indifference. *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017). Instead, a defendant's conduct must reveal an element of intention or recklessness. *Id.* ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently").

A concussion, "depending on its severity," may "be sufficiently serious enough to support an Eighth Amendment deliberate indifference claim." *Porter v. Bunch*, No. 16-CV-5935 (KMK), 2019 WL 1428431, at *9 (S.D.N.Y. Mar. 29, 2019). Whereas a mild concussion is "insufficient"

10

to support a deliberate indifference claim, *see McKinney v. New Haven Police Dep't*, No. 3:17-CV-1663 (JCH), 2017 WL 5137583, at *3 (D. Conn. Nov. 6, 2017), a "violent blow[ ]" to the head may cause a "sufficiently serious medical condition" when resulting in a concussion and attendant symptoms that last several weeks, such as dizziness, vomiting, and persistent headaches. *See Snoussi v. Bivona*, No. 05-CV-3133, 2010 WL 3924255, at *6 (E.D.N.Y. Feb. 17, 2010), *adopted by* 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010); *see also Porter*, 2019 WL 1428431, at *9 (finding concussion was sufficiently serious where plaintiff suffered "chronic and substantial pain in the form of untreated migraine headaches, dizziness, and blackout spells" (internal quotations omitted)); *McKinney*, 2017 WL 5137583, at *1, 3 (finding concussion was sufficiently serious where plaintiff had "lost and regained consciousness several times," suffered four to five headaches per day, and suffered from short-term memory loss).

Plaintiff alleges he sustained a concussion and suffered from short-term memory loss and migraines (*see* Compl. at 24, ¶ 29), and as such, he plausibly alleges a sufficiently serious medical condition to meet the objective prong of the Eighth Amendment analysis.[1]  *See McKinney*, 2017 WL 5137583, at *1, 3.  Plaintiff, however, fails to meet the subjective prong of the analysis. Plaintiff does not make any allegations to suggest Defendants knew Plaintiff had sustained a serious concussion.  For example, Plaintiff does not specify what Defendants believed Plaintiff's injuries to be or what Defendants said to Plaintiff that "indicated [they] were aware that he had suffered serious injuries but nonetheless would not treat them."  *See Porter*, 2019 WL 1428431, at *9 (finding plaintiff's concussion met objective prong of Eighth Amendment analysis, but

---

[1] Plaintiff also alleges he sustained scratches, cuts, and bruises.  (Compl. at 24, ¶ 29.)  Courts in this circuit, however, "have consistently held that cuts, lacerations, bruises, and other superficial injuries similar to those Plaintiff sustained here are not sufficiently serious to support a deliberate indifference claim."  *E.g., Goodwin v. Kennedy*, No. CV 13-1774 SJF AKT, 2015 WL 1040663, at *12 (E.D.N.Y. Mar. 10, 2015) (internal quotations omitted) (collecting cases).

dismissing claim because plaintiff failed to allege facts suggesting defendants knew of the severity of plaintiff's concussion and still refused to treat it).  Defendants' lack of subjective culpability is bolstered by Plaintiff's allegations, as he acknowledges they gave him medication to address injuries to his jaw and face, as well as "dental" issues (Compl. at 24).  Defendants' treatment regime either suggests (1) Defendants provided care to Plaintiff and Plaintiff simply disagrees with the quality of care, *see Brown v. Selwin*, 250 F. Supp. 2d 299, 308 (S.D.N.Y. 1999) ("[I]nadequacy or impropriety of the care that was given will not support an Eighth Amendment claim."), *aff'd*, 29 F. App'x 762 (2d Cir. 2002), or (2) Defendants did not know Plaintiff's injuries were more serious and thus limited treatment to medication, *see Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000) (explaining that "mere malpractice" "does not amount to an Eighth Amendment violation," such as when a defendant "delay[s] . . . treatment based on a bad diagnosis or erroneous calculus of risks and costs" or makes "a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady").  That is especially true where, as here, Plaintiff's objectively serious injuries—those related to his concussion, *i.e.,* memory loss, migraines—were invisible. *See Porter*, 2019 WL 1428431, at *10 (finding plaintiff's untreated concussion symptoms did not meet subjective prong of analysis where plaintiff did not allege symptoms "looked like such that [defendants] would be on notice that [plaintiff's] injuries were severe").  Absent allegations that Defendants were aware Plaintiff was suffering from memory loss, migraines, and other symptoms indicative of severe concussive trauma and yet chose to do nothing, Plaintiff cannot establish Defendants' subjective culpability.  *Cf. Harrison*, 219 F.3d at 139 (denying defendants' motion to dismiss where defendants "adamantly refuse[d] treatment of a properly diagnosed condition that was progressively degenerative, potentially dangerous and painful, and that could be treated easily

and without risk," holding therein that "[c]onsciously disregarding an inmate's legitimate medical needs is not 'mere medical malpractice'").

Accordingly, this Court dismisses without prejudice Plaintiff's medical indifference claims.

### III.  Failure to Protect

The Eighth Amendment proscribes the unnecessary and wanton infliction of pain and imposes a duty on prison officials to take "reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994).  Accordingly, a prison official's failure to protect a prisoner from harm may form the basis of a Section 1983 claim.  *See id.* at 833.

 For a failure to protect claim, the Court must apply the two-pronged framework for claims of deliberate indifference.  First, "the plaintiff must demonstrate that the alleged deprivation is sufficiently serious under an objective standard" and, second, the plaintiff must demonstrate "that the charged prison officials acted with a sufficiently culpable state of mind."  *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (citing *Farmer*, 511 U.S. at 834).  Put differently, a successful failure to protect claim typically requires the prisoner-plaintiff to "establish both that a substantial risk to his safety actually existed and that the offending prison officials knew of and consciously disregarded that risk," or otherwise demonstrate "evil intent, recklessness, or at least deliberate indifference."  *Baines v. City of N.Y.*, No. 01 Civ. 2645 PKC GWG, 2004 WL 213792, at *6 (S.D.N.Y. Feb. 5, 2004); *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985).

Plaintiff's allegations do not give rise to a plausible failure to protect claim under either prong of the Eighth Amendment analysis.  Reading the Complaint liberally, Plaintiff alleges that by alerting Blot Jr., Funk, and Johanamann to Everly's conduct, these Defendants were aware that Plaintiff was objectively subject to a "substantial risk to his safety." *E.g., White v. Gutwein*, No.

20-CV-4532 (NSR), 2022 WL 2987554, at *4 (S.D.N.Y. July 28, 2022).   Based on Plaintiff's allegations, Defendants were aware of the following information: (1) Blot Jr. and Johanamann were aware that Everly had delayed his recreation time and that Everly had stolen items, including a broom, from Plaintiff's cell (Compl at ¶¶ 5–6, 12–13); and (2) Funk was aware that Everly had stolen Plaintiff's razor from his cell (*id.* at ¶ 22).   These allegations, read generously, fall well short of establishing an objectively "substantial risk" to Plaintiff's safety, *see White*, 2022 WL 2987554, at *4 (finding no objective risk to plaintiff's safety where assaulter had no "long-standing, pervasive, well-documented history of similar attacks" (internal quotations omitted)), let alone that these Defendants *actually* knew Plaintiff was at risk,[2] *see id.* (finding no subjective risk to plaintiff's safety where there did not exist "a sufficiently detailed account of the particular assaulter's specific threats to the plaintiff or past instances of aggression").

Accordingly, this Court dismisses without prejudice Plaintiff's failure to protect claims.

**IV.    Due Process**

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process."  *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).  Reading the Complaint liberally, Plaintiff appears to bring two due process claims: first, that he was deprived of a property interest—without due process—when Everly stole items from his cell, and second, that he was deprived of a liberty interest—without due process—when Kopp and Venettozzi

---

[2] Plaintiff alleges Everly told him, "I control you. I own you. You belong to me."  (Compl. at ¶ 15.)  As disturbing as Everly's alleged statement is, the threat does not necessarily imply—without more—physical violence. In addition, Plaintiff does not allege that he shared Everly's statement with any of the Defendants.

sentenced Plaintiff to 45 days of solitary confinement in the SHU, including the loss of phone, package, and commissary privileges.

A. Loss of Property

At the outset, Plaintiff does not state a Section 1983 claim with respect to his allegedly stolen items. An "unauthorized intentional deprivation of property by a state employee does not constitute a violation of . . . the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Second Circuit has determined that New York "affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action." *Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470, at *13 (S.D.N.Y. Sept. 29, 2014) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)). As such, "[d]istrict courts routinely dismiss claims by inmates who assert that they were deprived of property by corrections officers in New York," *Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *7 (S.D.N.Y. Sept. 25, 2020) (quotation marks and citation omitted), and so too must this Court. Plaintiff cannot sustain a Section 1983 claim against a New York state official on the sole basis of a deprivation of personal property. *Gunn v. Malani*, No. 20-CV-2681 (KMK), 2021 WL 5507057, at *5 (S.D.N.Y. Nov. 23, 2021) (citing *Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir. 1988)).

Accordingly, this Court dismisses with prejudice Plaintiff's deprivation of property claim.

B. Disciplinary Action

An incarcerated individual "has the right not to be deprived of a protected liberty interest without due process of law." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Generally, however, an incarcerated individual "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (citing *Freeman*, 808 F.2d 949 at

951).  Therefore, because "[t]he issuance of false misbehavior reports ... by corrections officers is insufficient on its own to establish a denial of due process," *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) (citation omitted), a false misbehavior report violates due process only where Plaintiff can show that "he was disciplined without adequate due process as a result of the report" or "that the report was issued in retaliation for exercising a constitutionally protected right." *Willey*, 801 F.3d at 63 (quotations and citations omitted); *Mitchell*, 158 Fed. App'x at 349.  Having ruled *supra* that Plaintiff did not allege a causal connection between the false report's issuance and Plaintiff's prior grievances, this Court now addresses whether Plaintiff was disciplined without adequate due process.

First, to determine whether a disciplinary action violates Plaintiff's protected liberty interest, this Court must consider whether the "discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  Specifically, the Court should weigh "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" as well as the "duration of the disciplinary segregation compared to discretionary confinement." *Id.*  Recognizing that an unusually long SHU sentence can by itself constitute an "atypical and significant hardship," the Second Circuit has also ruled that shorter SHU confinements, *i.e.,* less than 101 days, can still qualify as an "atypical and significant hardship" where "the conditions were more severe than the normal SHU conditions." *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) (citing *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999) ("Whether the conditions of [plaintiff's] confinement constitute an atypical and significant hardship requires that they be considered in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.")).

16

Here, Plaintiff's 45-day SHU confinement is insufficient to claim a liberty interest.  While this Court acknowledges any length of SHU confinement entails hardship, the Complaint does not include any allegations that Plaintiff's confinement was "more severe than the normal SHU conditions," *Palmer*, 364 F.3d at 65, such as those "endured by prisoners in general population," *Welch*, 196 F.3d at 393.  As such, Plaintiff's 45-day confinement and attendant loss of privileges alone do not suffice as an "atypical and significant hardship" under Second Circuit precedent, and without more, Plaintiff cannot claim a liberty interest and thus cannot sustain a claim that the disciplinary action violated his due process rights.  *See, e.g., Marcus v. Annucci*, 20-CV-06234 (PMH), 2022 WL 280935, at *6 (S.D.N.Y. Jan. 31, 2022) (finding no constitutional violation in a SHU sentence that involves, inter alia, the loss of "recreation, packages, commissary, and phone privileges for ninety days"); *but see McGriff v. Keyser*, No. 17-CV-7307 (NSR), 2019 WL 6033421, at *5 (S.D.N.Y. Nov. 13, 2019) (ruling plaintiff properly pleaded liberty interest with respect to SHU confinement of 38 days where plaintiff included "complaints regarding food contamination and 'concussive noises'").

Accordingly, this Court dismisses without prejudice Plaintiff's deprivation of liberty claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The following claims are dismissed without prejudice: (1) Plaintiff's retaliation claims against Everly, Dillon, Perrotta Jr., Alban, Germano Jr., and Flanagan; (2) Plaintiff's deliberate indifference claims against Heitz, Uzu, Blot Jr., and Flanagan; (3) Plaintiff's failure to protect claims against Blot Jr., Funk, and Johanamann; and (4) Plaintiff's disciplinary hearing due process claims against Kopp and Venettozzi.  Plaintiff's loss of property due process claim against Everly is dismissed with prejudice.

As stated *supra*, Plaintiff's excessive force claims against Everly, Dillon, Perrotta Jr., Alban, Germano Jr., and Flanagan remain.

Plaintiff may file an Amended Complaint on or before May 5, 2023, should he choose to reassert claims that were dismissed without prejudice.  Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain—aside from those claims dismissed with prejudice per this Opinion & Order— must be included in the amended complaint.  An Amended Civil Rights Complaint form is attached to this Opinion.  If Plaintiff elects to file an amended complaint, Defendants shall answer or otherwise seek leave to move in response to Plaintiff's Amended Complaint on or before June 5, 2023.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 36.

The Clerk of Court is further directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

SO ORDERED.

Dated:   March 21, 2023
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                    Middle Initial              Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                              State                       Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____


Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.


| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |


Date on which I am delivering this complaint to prison authorities for mailing:  _____