USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __04/30/2024__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN HAMLETT,

                              Plaintiff,

        -against-

TAJ K. EVERLY, C.O.; CHRISTOPHER J.
DILLON, C.O.; GARY J. PERROTTA, JR.;
ANTONIO M. ALBAN, C.O.; THOMAS A.
GERMANO, JR., C.O.; RICHARD T.
FLANAGAN; MICHEL BLOT, JR.;
MICHAEL D. FUNK, SGT.; DONALD
VENETTOZZI; MARILYN KOPP; D.
HEITZ, EDWIN UZU, AND MR.
JOHANAMANN,

                              Defendants.

---

21-cv-6663 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff John Hamlett ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action against Correctional Officer Taj K. Everly, Correctional Officer Christopher J. Dillon, Correctional Officer Gary J. Perrotta Jr., Correctional Officer Antonio M. Alban, Correctional Officer Thomas A. Germano, Correctional Officer Richard T. Flanagan, Correctional Sergeant Michel Blot Jr., Correctional Sergeant Michael D. Funk, New York State Department of Corrections and Community Supervision ("DOCCS") Director of Special Housing Donald Venettozzi, Hearing Officer Marilyn Kopp, Nurse D. Heitz, Dr. Edwin Uzu, and Correctional Sergeant Johanamann (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 through an Amended Complaint filed on May 8, 2023. ("Am. Compl.", ECF No. 41.) Plaintiff asserts Section 1983 claims for excessive force, retaliation, failure to protect, deliberate indifference to medical needs, and violations of due process. (*Id.*) Presently before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF

No. 51), as well as Plaintiff's cross-motion to file a Second Amended Complaint (ECF No. 48). For the following reasons, Defendants' motion is GRANTED in part and DENIED in part and Plaintiff's motion is DENIED.

## FACTUAL BACKGROUND

The following facts are derived from the Amended Complaint and the documents appended thereto and are assumed to be true for the purposes of this motion.

On August 7, 2018, Plaintiff, who is an inmate at Green Haven Correctional Facility ("Green Haven") asked Correctional Officer Danielle Germano to allow Plaintiff access to food, recreation, and the prison commissary. (Am. Compl. ¶ 24.) D. Germano granted Plaintiff access to food, but refused to place him on the list for both commissary and food, stating that he would have to choose between the two options. (*Id*. ¶ 25.) The applicable rules and regulations of Green Haven did not require Plaintiff to choose between the two options. (*Id.* ¶ 26.) Plaintiff explained to D. Germano that she was mistaken in her belief that he had to choose between recreation and commissary, but she refused to listen to him. (*Id.* ¶ 27.) Later that day, Defendant Everly refused to allow Plaintiff to go to recreation because Plaintiff "complains too much." (*Id.* ¶ 28.) Plaintiff filed grievances relating to both incidents. (*Id.* ¶ 30.)

An inmate (the "Neighboring Inmate") whose cell neighbored Plaintiff's cell was a member of the Inmate Grievance Resolution Committee and shared a friendly relationship with Everly. (*Id*. ¶¶ 45-46.) In order to gain Everly's favor, the neighboring inmate lied to Everly, falsely alleging that Plaintiff had been filing grievances at Green Haven, (*id.* ¶ 47) and leading Everly to incorrectly believe that Plaintiff had filed grievances against him prior to the events of August 7, 2018 (*id.* ¶ 44). Shortly after Neighboring Inmate lied to Everly, Everly approached Plaintiff and asked if he "liked filing grievances." (*Id.* ¶ 48.)

On August 14, 2018, Defendant Blot questioned Plaintiff about the grievances that he filed against Everly and D. Germano. (*Id.* ¶ 33.) According to Plaintiff, Defendant Blot is related to Defendant Everly, and he and Everly "informally discuss events that occur at Green Haven outside the formal channels of their employment," including Plaintiff's filing of grievances. (*Id.* ¶¶ 41-43.)

Although Plaintiff was now allowed to go to recreation, Everly delayed Plaintiff so that he would not have access to his telephone privileges. (*Id.* ¶ 52.) Moreover, when Plaintiff returned to his cell after recreation, he noticed some of his personal items were missing. (*Id.* ¶ 55.) The next day, when Plaintiff returned from dinner, he again noticed another item was missing. (*Id.* ¶ 57.) Other prisoners told Plaintiff that Everly had taken Plaintiff's items from Plaintiff's cell because they had seen Everly with the missing items. (*Id.* ¶¶ 56, 58.)

On August 15, 2018, Plaintiff complained about Everly's theft to Defendants Johanamann and Blot. (*Id.* ¶ 59.) Johanamann dismissed Plaintiff, stating, "What do you want me to do?" (*Id.* ¶ 60.) Plaintiff answered Johanamann's question by stating that he would like Johanamann, as a correctional sergeant of DOCCS, to ensure that his co-workers and subordinates follow applicable DOCCS policies, procedures, and guidelines. (*Id.* ¶ 61.) Blot did nothing. (*Id.* ¶ 64.) That same day, when Plaintiff was returning to his cell, Everly refused to open Plaintiff's cell door and told him that he "controls" and "owns" Plaintiff and that Plaintiff "belongs" to him. (*Id.* ¶¶ 65-66.) When Everly finally allowed Plaintiff to enter his cell, Plaintiff noticed more items were missing. (*Id.* ¶ 67.) Plaintiff then wrote to the first deputy superintendent and the deputy chief investigator about needing to speak to them about Everly. (*Id.* ¶ 68.) Plaintiff learned through other inmates that Everly was planning to frame Plaintiff by planting contraband in his cell. (*Id.* ¶ 69.) Concerned that Everly would continue to take items from his cell or otherwise plant contraband in his cell,

Plaintiff strung a thread across the bottom of his cell door that would break upon someone entering. (*Id.* ¶ 70.)

On August 20, 2018, Plaintiff returned to his cell to find that the thread had been broken, which indicated that someone had been in his cell while he was away. (*Id.* ¶ 71.) Plaintiff notified the escorting correctional officer, requested that a sergeant be called to investigate, and waited outside his cell until the escorting correctional guard returned with Everly. (*Id.* ¶¶ 72-73.) Everly informed Plaintiff that the sergeant would be called once Plaintiff entered his cell, so Plaintiff reluctantly entered his cell and noticed that his razor was missing from his locker. (*Id.* ¶¶ 74-75.) Despite Everly's assurances that the sergeant would be called upon Plaintiff entering his cell, the sergeant never arrived to investigate. (*Id.* ¶ 76.) Upon questioning other inmates, Plaintiff learned that Everly had stolen his razor. (*Id.* ¶ 77.) When Plaintiff's cell block was released for yard, Everly again stopped Plaintiff until all the other inmates had passed by them. (*Id.* ¶ 79.)

When Plaintiff finally reached the yard, he informed Defendant Sergeant Michael Funk that Everly stole his razor from his cell and had been repeatedly stealing personal items from him. (*Id.* ¶ 80.) Plaintiff also informed Funk that Everly's actions that he feared Everly's "increasingly bold" conduct was going to continue "escalating," and that such conduct placed Plaintiff at risk of serious sanctions for conduct he did not commit. (*Id.* ¶ 82.) Plaintiff finally told Funk that he had reason to believe from other inmates that Everly intended to plant contraband in his cell. (*Id.* ¶ 83.) Funk informed Plaintiff that he "would take care of it." (*Id.* ¶ 84.)

The next day, while Plaintiff was at recreation, Everly ordered Plaintiff to remove everything from his pockets and place his hands on the wall. (*Id.* ¶ 86.) Plaintiff complied. (*Id.* ¶ 87.) In the presence of Defendants Dillon, Perrotta, Alban, and T. Germano, Everly "slammed" Plaintiff's head against the "concrete" wall, rendering Plaintiff unconscious. (*Id.* ¶¶ 88, 90-91.)

While Plaintiff was unconscious, Defendants Everly, Dillon, Dillon, Perrotta, Alban, T. Germano, and Flanagan, who arrived in response to the commotion, proceeded to beat, kick, and punch Plaintiff. (*Id.* ¶¶ 92-93.) All of the officers who participated in the assault on Plaintiff worked with each other in or around H-Block and "had reason to know about the grievances that Plaintiff had filed against D. Germano and Everly and about the other complaints made by Plaintiff about Everly." (*Id.* ¶ 95.)

Defendants Blot and Flanagan then dragged Plaintiff to the Special Housing Unit ("SHU"), or solitary confinement. (*Id.* ¶ 94.) While in the SHU, Plaintiff briefly regained consciousness as correctional officers were holding him up in the shower and washing the mace off of him. (*Id.* ¶ 96.) During this moment of consciousness, Plaintiff noticed the blue uniform of a nurse nearby, and then Plaintiff fell back into consciousness. (*Id.* ¶¶ 97-98.) The medical reports indicate that the nurse Plaintiff observed was Defendant Heitz. (*Id*. ¶ 99.) Despite Heitz being physically present while multiple officers supported Plaintiff's unconscious body in the shower, the medical reports omit the fact that Plaintiff had been unconscious. (*Id.* ¶ 100.) Plaintiff later awoke in a cell of the SHU to the sound of a rat nearby. (*Id.* ¶ 101.) Each day Plaintiff was confined in the SHU, Defendant Dr. Uzu came around to check on the medical needs of the inmates. (*Id.* ¶ 102.) Each time Uzu came near Plaintiff's cell, he informed Uzu that he was dizzy, was experiencing unbearable headaches, was falling in and out of consciousness, and could not stand without supporting himself with the cell bars. (*Id.* ¶ 104.) Despite Plaintiff informing Uzu of his medical needs, Uzu never physically examined him. (*Id.* ¶ 105.)

Defendants Everly, Dillon, and Alban then filed a "false" disciplinary report against Plaintiff that alleged that Plaintiff assaulted staff, made threats, engaged in harassment, and violated direct orders and frisk procedures. (*Id.* ¶ 106.) The false report led to a tier 3 disciplinary

hearing for which Defendant Marilyn Kopp served as the hearing officer. (*Id.* ¶ 107.) Kopp ultimately concluded that Plaintiff was guilty of the conduct alleged in Everly's false disciplinary report and sentenced him to forty-five days of solitary confinement in the SHU, without access to phone, packages, and commissary. (*Id.* ¶ 115.) Plaintiff appealed Kopp's determination to Defendant Venettozzi, who affirmed Kopp's determination. (*Id.* ¶¶ 116-117.)

## PROCEDURAL HISTORY

Plaintiff filed his original Complaint on August 5, 2021. (*See* ECF No. 2.) Defendants moved to dismiss on June 23, 2022 (*see* ECF No. 36), and the Court granted the motion on March 21, 2023 (*see* ECF No. 40), with leave to replead all claims except the loss of property due process claim, which was dismissed with prejudice. Plaintiff filed his Amended Complaint on May 8, 2023. (*See* ECF No. 41.) On September 27, 2023, Defendants filed a motion to dismiss (ECF No. 51) the Amended Complaint, as well as a memorandum of law ("Defs.' MoL.", ECF No. 52) and reply (ECF No. 54), in support thereof. On September 13, 2023, Plaintiff filed a cross-motion for leave to file a second amended complaint (ECF No. 48), as well as a memorandum of law in support thereof and in an opposition to Defendants' motion to dismiss (ECF No. 50).

## LEGAL STANDARDS

### I.    Fed. R. Civ. P. 12(b)(6)

On a Fed. R. Civ. P. 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims

"across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

      *Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II.   42 U.S.C. § 1983 Claims

      Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

**DISCUSSION**

Plaintiff asserts the following Section 1983 claims: (1) excessive force in violation of the Eighth Amendment against Defendants Everly, Dillon, Perrotta, Alban, T. Germano, and Flanagan; (2) retaliation in violation of the First Amendment against Defendants Everly, Dillon, Perrotta, Alban, T. Germano, and Flanagan; (3) failure to protect in violation of the Eighth Amendment against Defendants Blot, Funk, and Johanamann; (4) deliberate indifference to medical need in violation of the Eighth Amendment against Defendants Heitz and Uzu; and (5) violation of due process pursuant to Fourteenth Amendment against Defendants Kopp and Venettozzi.  Defendants do not move, at this time, to dismiss Plaintiff's excessive force claims against Defendants Everly, Dillon, Perrotta, Alban, T. Germano, and Flanagan, nor his claim for violation of due process against Kopp. Defendants, however, move to dismiss all of Plaintiff's other claims. The Court addresses each of these claims in turn.

## I.     First Amendment Retaliation

Plaintiff alleges three acts of retaliation, each motivated by the grievances he filed against non-party D. Germano and Defendant Everly: (1) an assault, carried out by Defendants Everly, Dillon, Perrotta, Alban, T. Germano, and Flanagan; (2) a false disciplinary report against Plaintiff, filed by Defendants Everly, Dillon, and Alban; and (3) items missing from Plaintiff's cell, stolen by Defendant Everly.

To prevail on a retaliation claim, an inmate must show first that he engaged in (1) constitutionally protected conduct, (2) that prison officials took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action such that the protected conduct was a substantial or motivating factor for the adverse action. *See Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Regarding the third prong of the *Espinal* test,

several factors may be used to determine whether a causal connection exists, including: "(1) the temporal proximity between the plaintiff's protected activity and the defendant's adverse action, (2) the prior disciplinary record of the inmate, (3) the outcomes of any hearings regarding the allegedly retaliatory charges, and (4) any statements defendant makes concerning his motive." *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 444 (S.D.N.Y. 2006) (citation omitted). "[C]ircumstantial evidence alone can be sufficient to meet th[e] burden of proof" for a retaliation claim, *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 236 (S.D.N.Y. Apr. 22, 2005), however, "[t]o survive a motion to dismiss, such claims must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms," *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (internal quotations omitted).

As was the case with his initial claim for retaliation, Plaintiff sufficiently alleges the first and third prongs of the retaliation analysis. (*See* ECF No. 40 at 7.) It is well-settled that "the filing of prison grievances is a constitutionally protected activity." *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003). In addition, Plaintiff's allegations that he was slammed into a concrete wall, beaten, kicked, and maced constitute adverse action. *See, e.g., Rivera v. Goord*, 119 F. Supp. 2d 327, 333, 340 (S.D.N.Y. 2000) (finding assault was "adverse action" where defendant "pinned [plaintiff] against a wall, banging his face into the wall and twisting his arms behind him"). The filing of a false disciplinary report also constitutes adverse action. *George v. County of Westchester, et al.*, No. 20-CV-1723 (KMK), 2021 WL 4392485, at *6 (S.D.N.Y. Sept. 24, 2021) (collecting cases) (citing *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004)). Finally, Plaintiff's allegation that Defendant Everly stole items from his cell also suffices as adverse action because Defendant Everly's theft could have led to Plaintiff being sentenced to keep-lock confinement and thereby

deprived of his ability to file further grievances. *See Hill v. Laird*, No. 06-CV-0126 JS ARL, 2014 WL 1315226, at *8–9 (E.D.N.Y. Mar. 31, 2014).

As before, however, Plaintiff fails to establish the necessary causal connection between his protected activity—filing grievances against D. Germano and Everly—and Defendants Dillon, Perrotta, Alban, T. Germano, and Flanagan's retaliatory conduct. Beyond conclusory allegations, the Amended Complaint is silent regarding these five Defendants' motive for their purportedly retaliatory conduct. Plaintiff includes no allegations to suggest that these Defendants knew of the grievances Plaintiff filed, and instead speculates that merely because the Defendants "worked with each other in or around H-Block," they "had reason to know about the grievances that Plaintiff had filed against D. Germano and Everly." (Am. Compl. ¶ 95.) Likewise, Plaintiff implies that because "T. Germano is the brother of D. Germano, against whom Plaintiff had filed grievances," T. Germano must have known about the grievances Plaintiff filed. (*Id.* ¶ 89.) Such speculative and conclusory allegations are insufficient to state a cognizable retaliation claim. *See Friedl*, 210 F.3d at 85-86; *see also Rucano v. Venettozzi*, No. 18 Civ. 0218, 2018 WL 11467223, at *6 (N.D.N.Y. Oct. 25, 2018); *41 North 73 West, Inc. v. County. of Westchester, New York*, No. 08 Civ. 4523, 2009 WL 10740050, at *11 (S.D.N.Y. Sept. 29, 2009). Because Plaintiff has not provided sufficient evidence from which a jury could conclude that his protected First Amendment activity was "a substantial or motivating factor" in Dillon, Perrotta, Alban, T. Germano, and Flanagan's alleged "adverse action against" him, his retaliation claim against them fails. (*See* ECF No. 40 at 6.)

Plaintiff has, however, established the causal connection necessary at this stage between his protected activity and Defendant Everly's retaliatory conduct. Plaintiff's allegation that the Neighboring Inmate lied to Everly that Plaintiff had been filing grievances against him, if accepted

as true, suggests a motive for Everly's retaliation. (*See* Am. Compl. ¶ 44.) Everly thereafter asking Plaintiff if he "liked filing grievances," (*id.* ¶ 48) as well as the temporal proximity between Plaintiff's protected activity and Everly's adverse action add to this mosaic of circumstantial evidence, *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002). The Court has previously found similar allegations sufficient to support an inference of a causal relationship. *See, e.g., Davis v. Rhoomes*, No. 07CIV6592JGK, 2009 WL 415628, at *7 (S.D.N.Y. Feb. 19, 2009) (finding causation where a defendant was angered by plaintiff's filing of a grievance and destroyed his legal papers a few days later). Moreover, "at this early stage" in the litigation, the Court must permit Plaintiff "'the opportunity to develop facts' in support of [his] claim." *Fabricio v. Annucci*, 790 F. App'x 308, 311 (2d Cir. 2019) (quoting *Morales v. Mackalm*, 278 F.3d 126, 131-32 (2d Cir. 2002) (per curiam), *abrogated on other grounds by Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), *as recognized in Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004)). "Whatever the ultimate merit to these factual allegations, they suffice at this stage to raise a plausible inference that" Everly retaliated against Plaintiff "to punish him for the previous grievance[s] he had filed." *See Rhoomes*, 2009 WL 415628, at *8. Accordingly, Defendants' motion to dismiss will be denied as to Plaintiff's retaliation claim against Defendant Everly, but granted as against all other Defendants.[1]

---

[1] The Defendants argue that the Amended Complaint "should be dismissed pursuant to the law of the case doctrine because it re-alleges the same claims on the same dates against the same defendants utilizing near identical allegations." (Defs.' MoL at 7.) "The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). Where, as here, the plaintiff has filed an amended complaint following an earlier ruling, the law of the case doctrine does not apply "to the extent that [the p]laintiff has offered new claims or factual allegations." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316-17 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015) (summary order); *see also Kregler v. City of New York*, 821 F.Supp.2d 651, 658 (S.D.N.Y.2011) (finding law of the case doctrine inapplicable because the plaintiff made new factual allegations and advanced a new central theory of liability); *Bellezza v. Holland*, No. 09 CIV. 8434, 2011 WL 2848141, at *3 (S.D.N.Y. July 12, 2011) ("The law of the case doctrine does not control here, however, as the [a]mended [c]omplaint alleges materially different and more detailed claims than the original [c]omplaint"). Plaintiff's allegations regarding the Neighboring Inmate lying to Everly and Everly asking if Plaintiff likes to file grievances are

II.      **Eighth Amendment Failure to Protect**

To state an Eighth Amendment claim for failure to protect, "a plaintiff must [first] show that he was incarcerated under conditions posing a substantial risk of serious harm, and [second] that prison officials acted with deliberate indifference to that risk and the inmate's safety." *Liverpool v. Davis*, 442 F. Supp. 3d 714, 728 (S.D.N.Y. 2020).

Plaintiff alleges that by alerting Defendants Blot, Funk, and Johanamann to Defendant Everly's "increasingly bold" conduct (*see* Am. Compl. ¶ 129), these Defendants were aware that Plaintiff was objectively subject to a "substantial risk to his safety," *White v. Gutwein*, No. 20-CV-4532 (NSR), 2022 WL 2987554, at *4 (S.D.N.Y. July 28, 2022). Based on Plaintiff's allegations, Defendants were aware of the following information: (1) Blot and Johanamann were aware that Everly had delayed Plaintiff's recreation time, that Everly had stolen items, including a broom, from Plaintiff's cell, and that Everly was "harassing" him (*see* Am. Compl. ¶¶ 33, 59, 63); and (2) Funk was aware that Everly had stolen Plaintiff's razor and other items from his cell, that Plaintiff feared Everly's conduct was "escalating," and that other inmates had informed Plaintiff that Everly intended to plant contraband in his cell (*see id*. ¶¶ 80-83). These allegations fall short of establishing an objectively "substantial risk" to Plaintiff's safety, *see White*, 2022 WL 2987554, at *4, let alone that these Defendants *actually* knew Plaintiff was at risk, *see id.* (finding no subjective risk to plaintiff's safety where there did not exist "a sufficiently detailed account of the particular assaulter's specific threats to the plaintiff or past instances of aggression"). Together, the allegations only suggest that Defendants were aware of Plaintiff's fear of Everly's ongoing theft and harassment, not of a specific threat to Plaintiff's safety. *Cf. Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) (reversing summary dismissal as to defendant corrections officer who ignored

---

new, and therefore render the law of the case doctrine inapplicable to his retaliation claim against Everly. *See City of Philadelphia v. Bank of Am. Corp.,* 609 F. Supp. 3d 269, 282 (S.D.N.Y. 2022).

death threats made against plaintiff inmate by another inmate who subsequently attacked plaintiff). Moreover, "given the lack of prior history of violence between [Plaintiff] and [Everly,]" there was no reason for Defendants "to infer the existence of a threat of harm." *See Desulma v. City of New York*, No. 98CIV.2078(RMB)(RLE), 2001 WL 798002, at *7 (S.D.N.Y. July 6, 2001). *Cf. Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) (reinstating action against defendant lieutenant, where an inmate attacked plaintiff after defendant failed to respond to plaintiff's complaint that that particular inmate had previously tried to attack him and would probably do so again); *Baker v. Rodriguez,* No. 89 Civ. 0748, 1991 WL 156375 (S.D.N.Y. Aug. 8, 1991) (finding defendant corrections officer deliberately indifferent where plaintiff inmate was attacked by another inmate with a 24-inch hatchet after defendant failed to segregate the inmate, despite having been informed by plaintiff that that inmate possessed the weapon and had previously assaulted him). Accordingly, the Court dismisses Plaintiff's failure to protect claims.

### III.    Eight Amendment Inadequate Medical Care

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, which includes the failure to provide incarcerated persons with adequate medical care, *Estelle v. Gamble,* 429 U.S. 97, 103-05 (1976). To state a claim for medical indifference, an inmate must show that (1) he had an objectively serious medical need, and (2) the defendant acted with subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). This is typically a mental state equivalent to criminal recklessness wherein the official knew and disregarded an "excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (noting that "deliberately refus[ing]" to treat a medical condition "with conscious disregard of the substantial

risk of serious harm" constitutes deliberate indifference). Consequently, mere negligence is insufficient to state a claim of deliberate indifference. *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017). Instead, a defendant's conduct must reveal an element of intention or recklessness. *Id.* ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently").

As was the case with his prior deliberate indifference claim, Plaintiff's allegation that he sustained a concussion and suffered from short-term memory loss and migraines constitutes an objectively serious medical need under the Eighth Amendment. (*See* ECF No. 40 at 11 (citing *McKinney v. New Haven Police Dep't*, No. 3:17-CV1663 (JCH), 2017 WL 5137583, at *1, *3 (D. Conn. Nov. 6, 2017).) Plaintiff again, however, fails to meet the subjective prong of the analysis. Plaintiff does not make any allegations to suggest Defendants Heitz and Uzu knew that Plaintiff had sustained a serious concussion. For example, Plaintiff does not specify what Defendants believed Plaintiff's injuries to be or what Defendants said to Plaintiff that "indicated [they] were aware that he had suffered serious injuries but nonetheless would not treat them." *See Porter v. Bunch*, No. 16-CV-5935 (KMK), 2019 WL 1428431, at *9 (S.D.N.Y. Mar. 29, 2019) (finding plaintiff's concussion met objective prong of Eighth Amendment analysis, but dismissing claim because plaintiff failed to allege facts suggesting defendants knew of the severity of plaintiff's concussion and refused to treat it). Plaintiff contends that merely because he was unconscious when first brought to SHU, Heitz should have known that Plaintiff was suffering from a serious concussion. (*See* Am. Compl. ¶¶ 98-100; 132.) Likewise, simply because Plaintiff informed Uzu "that he was dizzy, was experiencing unbearable headaches, kept falling in and out of consciousness, and could not stand without supporting himself with the cell bars," (*id.* ¶¶ 100, 103-04), Uzu should have been "aware of the extent and seriousness of Plaintiff's grave medical condition" (*id.* ¶ 135). Although awareness may be proven "from the very fact that the risk was

obvious," *Farmer*, 511 U.S. at 842, it cannot be said such a risk was obvious based only on Plaintiff

being unconscious, dizzy, and suffering headaches, but nothing more.

By contrast, Plaintiff's objectively serious injuries—those related to his concussion, *i.e.*,

memory loss, migraines (Am. Compl. ¶ 132)—were invisible, *Porter*, 2019 WL 1428431, at *10

(finding plaintiff's untreated concussion symptoms did not meet subjective prong of analysis

where plaintiff did not allege symptoms "looked like such that [defendants] would be on notice

that [plaintiff's] injuries were severe"). In other words, that Heitz and Uzu knew that Plaintiff was

struggling with consciousness and dizziness does not give rise to the inference that Defendants

knew of an "excessive risk" to Defendant's health, *see Farmer*, 511 U.S. at 837, or that specific

medical treatment, such as "examination by a neurologist" (Am. Compl. ¶ 133), was deliberately

or recklessly withheld at this point, *see Washington v. Westchester Cty. Dep't of Corr.*, No. 13-

CV-5322, 2014 WL 1778410, at *7 (S.D.N.Y. Apr. 25, 2014) (finding the plaintiff "failed to plead

deliberate indifference" by "fail[ing] to allege any facts demonstrating that [the] [d]efendants

deliberately withheld his medication"); *Baskerville v. Blot*, 224 F. Supp. 2d 723, 735–36 (S.D.N.Y.

2002) ("[B]ecause [the plaintiff's] assertions do not show that [the defendant] acted intentionally

to withhold from him his prescribed medication ..., he has failed to state an Eighth Amendment

claim of deliberate indifference to a serious medical need."); *Joyner v. Greiner*, 195 F. Supp. 2d

500, 503 (S.D.N.Y. 2002) (explaining that the subjective prong requires "some evidence that the

health care providers knowingly and intentionally rendered improper treatment" (citing *Farmer*,

511 U.S. at 837)). Absent allegations that Defendants were aware Plaintiff was suffering from

memory loss, migraines, and other symptoms indicative of severe concussive trauma and yet chose

to do nothing, Plaintiff cannot establish Defendants' subjective culpability. *Cf. Harrison*, 219 F.3d

at 139 (denying defendants' motion to dismiss where defendants "adamantly refuse[d] treatment

of a properly diagnosed condition that was progressively degenerative, potentially dangerous and painful, and that could be treated easily and without risk," holding therein that "[c]onsciously disregarding an inmate's legitimate medical needs is not 'mere medical malpractice'"). Plaintiff's allegations, even if accepted as true, only show that Defendants did not know Plaintiff's injuries were more serious and thus limited treatment, which "does not amount to an Eighth Amendment violation." *See id.* Accordingly, this Court dismisses Plaintiff's medical indifference claims.

## IV.    Due Process

Defendants argue that Plaintiff's Amended Complaint must be dismissed against Defendant Venettozzi because he was not personally involved in any alleged violation of Plaintiff's constitutional rights. It is well settled that to hold a defendant responsible for a constitutional deprivation, a plaintiff must demonstrate, *inter alia*, the defendant's personal involvement in the deprivation. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). To do so, the plaintiff must "allege a tangible connection between the acts of a [d]efendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). In particular, claims involving prison officials "require[] a showing of more than the linkage in the prison chain of command." *Ayers*, 780 F.2d at 210. Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676); *see also Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989) ("The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the [d]efendant is required.") Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective

on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted).

Here, Plaintiff has pleaded no facts suggesting that Defendant Venettozzi was personally involved in any alleged violation of Plaintiff's right to due process, except that he "wrongfully affirmed" Kopp's determination. (*See* Am. Compl. ¶ 117.) But merely "affirming the outcome of a prison hearing [is] not sufficient to establish personal involvement." *Smart v. Annucci,* 2021 WL 260105, at *5 (Jan. 26, 2021). "Indeed, the denial of [P]laintiff's appeal cannot support the inference that Venettozzi, through 'his own individual actions, has violated the Constitution.'" *Brown v. Annucci*, No. 19 CV 9048 (VB), 2021 WL 860189, at *9 (S.D.N.Y. Mar. 8, 2021) (quoting *Tangreti*, 983 F.3d at 615); *see also Smart*, 2021 WL 260105, at *5 (same). Accordingly, Plaintiff's claims against Defendant Venettozzi are dismissed.

## V.  Leave to Amend

Plaintiff has filed a cross-motion for leave to file a Second Amended Complaint and attached a proposed Second Amended Complaint ("SAC") to his cross-motion. (*See* ECF No. 49-1.) A motion to amend is evaluated under Federal Rule of Civil Procedure 15(a), which provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). Notwithstanding the liberal standard of Rule 15(a), however, a court may deny leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A proposed amendment is deemed futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss." *Metro. Transportation Auth. v. James River Ins. Co.*, No. 19-CV-3266 (RA), 2020 WL 5077250, at *3 (S.D.N.Y. Aug. 27, 2020) (quoting *Najjar Grp., LLC v. West 56th Hotel LLC*, No. 14-CV-

7120 (RA), 2017 WL 819487, at *3 (S.D.N.Y. Mar. 1, 2017)). District courts have broad discretion in ruling on a motion for leave to amend a complaint. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96 (S.D.N.Y. 2010) (collecting cases); *see also Orellana v. Macy's Retail Holdings, Inc.*, No. 17 Civ. 5192 (NRB), 2018 WL 3368716, at *7 (S.D.N.Y. July 10, 2018) ("Whether to grant leave, however, is ultimately 'within the sound discretion of the district court.'") (quoting *McCarthy*, 482 F.3d at 200).

Plaintiff's proposed Second Amended Complaint does not cure the deficiencies identified in the Amended Complaint, *supra*. Plaintiff does not allege any new facts regarding Defendants Dillon, Perrotta, Alban, T. Germano, and Flanagan's retaliatory motive. Instead, he continues to speculate that merely because the Defendants "worked with each other in or around H-Block," they "had reason to know about the grievances that Plaintiff had filed against D. Germano and Everly." (SAC ¶ 108; *see also* Am. Compl. ¶ 95.) As was the case with his Amended Complaint, such speculative and conclusory allegations are insufficient to state a cognizable retaliation claim. *See Friedl*, 210 F.3d at 85-86. Similarly, Plaintiff fails to plead any facts in the SAC suggesting that Defendants Blot, Funk, and Johanamann were aware that Plaintiff was objectively subject to a "substantial risk to his safety," *White*, 2022 WL 2987554, at *4, as required for a failure to protect claim. The SAC also does not include any allegations that Defendants Heitz and Uzu knew that Plaintiff had sustained a serious concussion, only that he was unconscious when first brought to SHU (SAC ¶¶ 111-113; *see also* Am. Compl. ¶¶ 98-100; 132) and later "dizzy,…experiencing unbearable headaches, kept falling in and out of consciousness, and could not stand without supporting himself with the cell bars," (SAC ¶ 117; *see also* Am. Compl. ¶¶ 104). These allegations fail to give rise to the inference that Defendants knew of an "excessive risk" to Defendant's health, *see Farmer*, 511 U.S. at 837, and therefore cannot establish Defendants' subjective culpability for

purposes of a medical indifference claim. Finally, the SAC only alleges again that Venettozzi denied Plaintiff's appeal (SAC ¶¶ 133-34; *see also* Am. Compl. ¶ 117), but merely "affirming the outcome of a prison hearing [is] not sufficient to establish personal involvement," *Smart,* 2021 WL 260105, at *5, for purposes of a due process claim. Plaintiff adds conclusory statements that Defendant Venettozzi "failed to investigate or ask any questions" regarding Kopp's determination (SAC ¶ 134), but does not explain why Venettozzi had a duty to investigate, nor why his purported failure to do so when reviewing a determination would support a due process claim. As a result, "[e]ven if the Court permitted Plaintiff[] to amend the [Amended] [C]omplaint…, Plaintiff[] fail[s] to show how such amendment would cure the deficiencies identified by" this opinion, *Metro. Transportation Auth.*, 2020 WL 5077250, at *4, or the Court's previous opinion (*see* ECF No. 40). Plaintiff's proposed amendments to his claims for retaliation, failure to protect, medical indifference, and due process "would not withstand a Rule 12(b)(6) motion to dismiss. Accordingly, Plaintiff's proposed amendments are futile, and the Court declines to grant Plaintiff leave to amend." *See Najjar Grp.*, 2017 WL 819487, at *6.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part and Plaintiff's cross-motion for leave to file the Second Amended Complaint is DENIED. The Court denies Defendants' motion to dismiss as to Plaintiff's retaliation claim against Defendant Everly, but grants the Defendants' motion to dismiss in all other respects. Because the Court previously granted Plaintiff leave to file an amended complaint (*see* ECF No. 40), and any proposed amendment would be futile, *see supra* Section V*,* all claims dismissed herein are dismissed with prejudice.

The surviving claims are as follows: (1) excessive force in violation of the Eighth Amendment against Defendants Everly, Dillon, Perrotta, Alban, T. Germano, and Flanagan; (2) retaliation in violation of the First Amendment against Defendant Everly; and (3) violation of due process pursuant to Fourteenth Amendment against Defendant Kopp. The parties are directed to complete and file a Case Management Plan and Scheduling Order to address all remaining claims by May 21, 2024.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 48 and 51. The Clerk of Court is further directed to terminate Defendants Michel Blot Jr., Michael D. Funk, Donald Venettozzi, D. Heitz, Dr. Edwin Uzu, and Sergeant Johanamann. The Clerk of Court is also directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

SO ORDERED.

Dated:   April 30, 2024
         White Plains, New York

_____
        NELSON S. ROMÁN
     United States District Judge